IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

**FILED**
July 16, 2020 11:08 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: __mkc_   SCANNED BY: _JW_ / 7-16

**1:20-cv-647**
Robert J. Jonker - Chief U.S. District Judge
Sally J. Berens - Magistrate Judge

CHRISTOPHER PAYTON MAY-SHAW,
(A.K.A. ROBERT HOGAN),

PLAINTIFF,

-against-

CIVIL RIGHTS
COMPLAINT

THE CITY OF GRAND RAPIDS,
DETECTIVE JON SCHAFER, DET-
ECTIVE CHAD PRESTON OF THE
GRAND RAPIDS POLICE DEPT.,
JOHN AND JANE DOES GRAND
RAPIDS MICHIGAN EMPLOYEES,

U.S. MARSHAL SENIOR INSPECTOR
JESSE LAKE, AND JOHN DOE
FEDERAL EMPLOYEES,

DEMAND FOR JURY ~~DEMAND~~
TRIAL

DEFENDANTS.

Plaintiff Christopher Payton May-Shaw (a.k.a Robert Hogan) proceeding Pro Se, brings this civil rights action pursuant to 42 U.S.C. § 1983 and Bivens v. Unknowned Agents, 403 U.S. 388, federal and State common law, to redress the violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment Rights under the United States Constitution, and alleges as follows upon personal knowledge and, where indicated below, upon information and belief:

## PRELIMINARY STATEMENT

1. Plaintiff Christopher Payton May-Shaw was unjustly targeted by the New York Police Department ("NYPD") and suffered severe injuries as a result of two unlawful arrests that occurred in the Summer of 2016, which were both ultimately dismissed. Additionally, the NYPD officers conspired with both the Grand Rapids Police Department ("GRPD") and the U.S. Marshal's Service of the Western District of Michigan ("U.S. Marshals") to unlawfully hold over $100,000 of Plaintiff's currency for over seven months without a warrant, probable cause, or other legal justification. Subsequently, federal agents continued to violate Plaintiff's due process notice rights and Sixth Amendment right to be

represented by an attorney of Plaintiff's Choice.

2. Instead of the NYPD returning Plaintiff's possessions at the conclusions of the two New York criminal cases, the NYPD held $105,145.31 of the Plaintiff's invoiced currency lacking probable cause or legal justification at the request of the GRPD and certain Michigan U.S. Marshals, who falsely claimed the funds "might be" related to a joint investigation that began in December of 2015 and ended February 18, 2016 in the Western District of Michigan. ¹ However, The NYPD unlawfully held this currency at the behest of the GRPD and U.S. Marshals, denying Plaintiff his due process rights. None of these government entities ever informed the Plaintiff of the basis for the seizure or gave him an opportunity to contest it.

3. Throughout the entire time Plaintiff was fighting criminal charges in New York, employees of the GRPD and U.S. Marshals repeatedly and

¹ The indictment and investigation (in the Western District of Michigan) was eventually superceded and went back to the summer of 2014 and ended February 18, 2016. The indictment did not include any events that occurred June 15, 2016 or August 10, 2016 in New York.

Consistently contacted the NYPD to request that NYPD continue to hold Plaintiff's currency, hereby entering into a conspiracy with the NYPD to unlawfully seize Plaintiff's property. The conspiracy ended on October 27, 2017, when the U.S. Marshals finally obtained a federal warrant for the seizure. The warrant was issued "after" prosecutor's in the Western District of Michigan admited that they could not find a sufficient "Nexus" to tie the N.Y. criminal cases to the Western District of Michigan's federal investigation and subsequent indictment. Even after the warrant, federal agents continued to violate Plaintiff's due process rights by failing to provide Plaintiff with notice of the seizure. Defendants, U.S. Marshals and GRPD infringed on Plaintiff's Sixth Amendment right to choose his own counsel. By unlawfully seizing Plaintiff's currency without probable cause, foreclosed Plaintiff's ability to retain a sufficient and effective counsel that may have been expensive, but nevertheless, would have sufficiently fought for Plaintiff, in trial, and against the federal indictment.

4. In a unrelated §1983 civil action against The City of New York and police officers of the NYPD, discovery as well as a Internal Affairs Bureau

("IAB") investigation exposed the defendants from the GRPD and the U.S. Marshals Secret attempts and conversations to violate Plaintiff's due process rights, and seize Plaintiff's currency. Discovery and IAB documents clearly demonstrated that all defendants mentioned herein had one common plan or scheme: to seize Plaintiff's currency without Plaintiff's knowledge.

5.   Plaintiff initially sought to remedy his harms, but now looks to the Court as his final, realistic prospect of retaining relief.


## JURISDICTION AND VENUE

6.   This action arises under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C § 1983 and Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), and Federal law.

7.   Subject matter jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343(a).

8. This Court has general personal jurisdiction over the City, GRPD employees, and other City

employee defendants, including U.S. Marshal defendants because, upon information and belief, all ~~individual~~ GRPD and U.S. Marshal defendants are domiciled and/or employed in the State of Michigan and in the Western District.

## PARTIES

9. Plaintiff Christopher May-Shaw was a citizen of Grand Rapids, Michigan, currently domiciled (temporarily) in Terre Haute, Indiana. At the time the relevant events occurred, Plaintiff was in New York.

10. Defendant City of Grand Rapids (the "CITY") is a municipal entity organized and existing under the laws of the State of Michigan. The City has established and maintains the GRPD as a constituent department or agency. At all times relevant hereto, the City, acting through the GRPD, was responsible for the policy, practice, supervision, implementation and conduct of all GRPD matters and was responsible for the appointment, training, supervision and conduct of all GRPD personnel, including the Defendants referenced herein.

11. At all relevant times, GRPD Detective Jon Schafer was a detective in the GRPD, acting

in the capacity of agent, servant and employee of
Grand Rapids, and within the scope of his employment
as such. He is sued in his official and individual
capacities.

12.   At all relevant times, GRPD Detective Chad
Preston was a detective in the GRPD, acting in the capa-
city of agent, servant and employee of Grand Rapids,
and within the scope of his employment as such. He
is sued in his official and individual capacities.

13.   At all relevant times, upon information and
belief, John Doe Michigan Employees (GRPD) were
acting in the capacity of agents, servants, and em-
ployees of Grand Rapids or Michigan State, and within
the scope of their employment as such. They are sued
in their individual and official capacities (when revealed
during discovery).

14.   At all relevant times, U.S. Marshal Senior
Inspector Jesse Lake was a U.S. Marshal in the
U.S. Marshals Service for the Western District of
Michigan Department of Justice, acting in the capa-
city of agent, servant and employee of the federal
Justice Department, and within the scope of his
employment as such. He is sued in his individual
capacity.

15. At all relevant times, upon information and belief, John Doe Federal Employees were acting in the capacity of agents, servants, and employees of the federal government, and within the scope of their employment as such. They are sued in their individual capacity (when revealed during/through discovery).

## FACTUAL BACKGROUND

I. IN 2017, through the NYPD, GRPD, and U.S. Marshals Conspired to unlawfully hold Plaintiff's currency in the amount of $105,145.31, and federal agents there-after Continued to violate Plaintiff's Fifth Amendment right to adequate notice of the seizure and Sixth Amendment right to be represented by an attorney of Plaintiff's own Choosing.

16. Although Plaintiff and his Power of Attorney made numerous attempts to retrieve plaintiff's currency through NYPD's many officials, the NYPD wrongfully withheld the property at the improper request of the GRPD, U.S. Marshals, and likely additional John Doe GRPD Employees and John Doe Federal Employees yet to be identified in "the Conspiracy." Neither the GRPD nor U.S. Marshals had probable

Cause to seize Plaintiff's currency that was seized by the NYPD, as evinced by Defendant U.S. Marshal Jesse Lake's statement that the U.S. Marshals were merely "in the process of seeking a seizure warrant for the currency held by the NYPD." This statement was made in a "Letter" sent to NYPD Authorities from Defendant Jesse Lake in his request that the NYPD hold Plaintiff's funds.

17. In a internal New York District Attorney's ("DA") memo, the NY DA's Bureau Chief noted: "We have provided the AUSA with documentation to [Mr. May-Shaw's] two open cases [in NY] to see if they can find a nexus and incorporate our cases into the federal indictment however, they have not found a nexus sufficient enough to incorporate our cases." (emphasis added). Defendants U.S. Marshal Lake, Preston, Schafer and the ~~GRPD~~ John does, and Federal John Does were not able to establish the alleged probable cause necessary to obtain this warrant until October 27, 2017 when it was finally issued — several months later.

18. Even after the federal seizure warrant was issued, Defendant U.S. Marshal Lake and

-9-

Other currently-unidentified John Doe federal Employees who participated in the federal investigation of Plaintiff under case number 1:17-CR-00057-PLM ("Federal Defendants") continued to violate his constitutional rights by (1) failing to provide Plaintiff with adequate notice of the seizure and (2) preventing Plaintiff from hiring counsel of his own choosing.

A. In 2017, through the NYPD, GRPD and U.S. Marshals Conspired to unconstitutionally retain $105,145.31 of Plaintiff's Currency.

19. On two separate occasions, currency was seized from Plaintiff. $93,654.12 on June 15, 2016, and $11,491.52 on August 10, 2016, which both seizures stemmed from unlawful arrests and were ultimately dismissed in Plaintiff's favor.

20. The August 10, 2016 arrest was dismissed first. In July of 2017, the June 15, 2016 arrest was dismissed. Immediately after the dismissal in July 2017, Plaintiff's Power of Attorney (and Mother) began the steps to gain Plaintiff's Currency and property.

21. On two occasions, July 19th 2017, and July 21, 2017 Plaintiff's Power of Attorney gained the necessary District Attorney Release and authorization to finally obtain both amounts of U.S. Currency by the District Attorney's office.

22. Even with the D.A.'s release, Plaintiff's Power of Attorney was getting the "run around" after several unsuccessful attempts to gain possesion of the seized currency. Plaintiff's Power of Attorney eventually filed an "acknowledgement of demand" regarding the U.S. currency.

23. On July 27, 2017, ~~written~~ Upon information and belief, from orders of Defendant Jon Schafer and other John Doe GRPD Employees, Defendant GRPD Detective Chad Preston called the NYPD Asset Forfeiture Unit to request that the NYPD continue to hold Plaintiff's currency despite the dismissal of both Plaintiff's NY Criminal Cases. Defendant Preston stated that the GRPD was conducting "an ongoing joint investigation with the DEA" regarding Plaintiff. Plaintiff was unaware of this phone call until the IAB investigation file was provided to Plaintiff some time in or near July of 2019,

through discovery of/in the Civil Complaint against the City of New York.

24. Upon information and belief, from orders by Defendant Jon Schafer and other John Doe GRPD Employees, Defendant Preston, Subsequently or prior to the July 27th phone Calls, Preston Contacted NYPD Authorities and "LIED" to officers Claiming that Plaintiff was "in the process of being indicted for multiple Kilos of heroin..." and other fabricated Statements to Coerce the NYPD into not releasing the U.S. Currency. Additionally, Plaintiff had "already" been indicted in February of 2017 by the Western District of Michigan. Neither time that Defendant Preston Contacted NYPD authorities, he did not have a warrant or probable Cause to ask NYPD to hold Plaintiff's currency.

25. Through discovery and IAB documents, it was revealed that on August 23, 2017 Defendant U.S. Marshal Lake "wrote" a letter to the NYPD requesting that it hold all currency Seized from Plaintiff until OCTOBER 31, 2017. Subsequently, Defendant lake was notified that the funds

were being held.

26. On August 29, 2017 Defendant Lake Contacted the NYPD to enquire about the two arrests of Plaintiff's. During this encounter (which were also revealed through IAB documents) Defendant Lake Stated that "U.S. Marshals were in the process of Seeking a Seizure warrant for the Currency held by the NYPD," and he (Lake) requested that the NYPD "remain holding the funds pending said warrant." At this time, the money was already being illegally detained for the GRPD Defendants and federal officers — unbeknownst to Plaintiff or Plaintiff's Power of Attorney and without a warrant or probable Cause.

27. On October 27, 2017, the U.S. District Court for the Western District of Michigan issued a warrant to seize Plaintiff's Currency that was being held by the NYPD. The application for the warrant was Submitted by Defendant U.S. Marshal Lake. Subsequently, the NYPD mailed a letter to Plaintiff's Power of Attorney Stating that Plaintiff's property had been "federally adopted for forfeiture" and directing all

inquiries to GRPD Detective Jon Schafer. An indivi-
dual behind the scenes that was involved with
the federal investigation and indictment of Plaint-
iff, as well as the unconstitutional seizure of
the currency.

28.  Upon information and belief, the I.A.B's
investigators revealed through documentations
that the GRPD Defendants (identified and unidenti-
fied) asked the NYPD to hold Plaintiff's funds
simply on the basis that "GRPD Officer Chad
Preston "believe[d] this money [was] part of his
federal investigation and want[ed] it held." (em-
phasis added).

29.  The "belief" that property or currency is
related to an investigation and the "desire" that
it be seized does not meet the probable cause
standard necessary to legally hold Plaintiff's
property under the Constitution.

30.  For several months in 2017, NYPD or
the City of New York had no legal basis to hold
Plaintiff's currency, and the Defendant U.S.
Marshal Lake did not have sufficient evidence

-14-

to establish probable cause for a federal warrant, which he had been attempting to obtain for quite some time. Yet, working together through the NYPD, Defendants GtRPD Detectives Schafer, Preston and John Doe GtRPD Employees, and Defendant U.S. Marshal Lake and John Doe Federal Employees successfully managed to defy Plaintiff's Constitutional rights and unlawfully hold his property for several months through a series of concealed agreements.

31. Since the NYPD hold was placed on Plaintiff's property for the Defendants herein, until the federal warrant was issued, neither Plaintiff nor his Power of Attorney were given the opportunity to contest the seizure, nor were we informed of the basis for the seizure.

B. After federal agents took possession of Plaintiff's $105,145.31 pursuant to a federal warrant, the Federal Defendants deprived Plaintiff of his Fifth Amendment right to adequate notice and Sixth Amendment right to be defended by his counsel of choice.

32. Upon information and belief, Defendant

-15-

U.S. Marshal Lake and Other John Doe Federal defendants violated Plaintiff's Fifth Amendment right by failing to ensure that the Plaintiff received Constitutionally-adequate notice of the federal seizure and retention of his property pursuant to the warrant issued on October 27, 2017.

33. According to prevailing Supreme Court Case Law: "When law enforcement agents seize property pursuant to a warrant, due process requires them to take reasonable Steps to give notice that the property has been taken So the owner can pursue available remedies for it's return". 525 U.S. 234, 240. Moreover, "individualized notice that the officers have taken the property is necessary in a case ... [where] the property owner would have no other reasonable means of ascertaining who was responsible for the loss," Such as Plaintiff's Case here. Id at 241.

34. Upon information and belief, Defendant U.S. Marshal Lake and John Doe Federal Employees Seized and retained Plaintiff's Currency without ever attempting to provide Plaintiff with notice

-16-

regarding the agency that had seized his property, the asserted legal basis for the seizure, or the means by which he could challenge the legality of the seizure. Plaintiff never received notice from any federal entity regarding the seizure. Plaintiff was only notified by the NYPD that some undisclosed federal entity was seeking forfeiture of his funds for an unspecified reason, and Plaintiff was told to contact the GRPD. Based on this vague and misleading notice, Plaintiff had no reasonable means to determine who was responsible for his loss. Consequently, Plaintiff was unable to research and determine the proper legal mechanisms to challenge the seizure and impending forfeiture. This violated Plaintiff's constitutional rights to procedural due process.

35. Defendants U.S. Marshal Lake and John Doe Federal Employees further engaged in "virtually unchecked use of the civil forfeiture statutes and the disregard for due process that is buried in those statutes" by seizing Plaintiff's currency under the guise of forfeiture "without ever actually initiating a forfeiture proceeding for the currency."

36. On October 27, 2017 Magistrate Judge Phillip J.

Green of the Western District of Michigan issued a Seizure Warrant for $105,145.31 Of Plaintiff's currency that was in the "Custody of the NYPD." Neither Plaintiff or his Power of Attorney were provided with a Copy of this warrant during the pendency of Plaintiff's federal criminal case, despite the fact that the warrant mandated: "[Y]ou must also give a Copy of the warrant and receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken." id.; see also Fed. R. Crim. P 41(f)(1)(C).

37. In the Seizure warrant application, Defendant U.S. Marshal Lake alleged that these funds were "subject to seizure and civil and criminal "forferture," thereby representing that the Department Of Justice (DOJ) intended to initiate both civil and criminal forfeiture proceedings to retain the currency. However, Upon information, Defendant U.S. Marshal Lake and John Doe Federal Employees never commenced forfeiture proceedings. Searches were performed for Plaintiff's seized currency on the DOJ's forfeiture notification website, and no records of related forfeiture proceedings were found. Upon information

-18-

and belief, Defendant U.S. Marshal Lake and John Doe Federal Employees failed to initiate forfeiture proceedings because doing so would have required them to notify Plaintiff of the details of the seizure and Plaintiff's right to contest it.

38. When federal civil forfeiture is initiated, statutes require that "notice of the seizure" and "intention to forfeit... or otherwise dispose of" the property "be published......" 19. USC § 1607(a)(4) see also... 39 C.F.R. 233.7 (j)(1)(i). Additionally, "notice of seizure together with information on the applicable procedures shall be sent to each party that appears to have an interest in the seized article." 19. USC § 1607(a)(4). This did not occur.

39. Similarly, federal Criminal forfeiture proceedings require the indictment or information to contain "notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute." Fed. R. Crim. P 32.2(a) This did not occur.

40. An individual whose property is subject to criminal forfeiture can challenge the seizure by

filing a motion to return property in the district where the property was seized. Fed. R. Crim. P 41(g). If the motion is granted, the individuals property must be returned to him. Id.

41. By refraining from initiating civil or criminal forfeiture proceedings, Defendants U.S. Marshal Lake and Other John Doe Federal Employees were able to conceal the nature of their seizure and retention of Plaintiff's currency. As A result, Plaintiff could not reasonably determine which legal mechanism he could use to challenge the seizure - evidence that his due process right to adequate notice of property deprivation had been violated.

42. In situations Such as Plaintiff's where the government substantially delays in instituting forfeiture proceedings, it must justify the delay, which all federal defendants have not attempted to do here.

43. Upon information and belief, Defendants U.S. Marshal Lake and John Doe Federal Employees' persistent failures to both notify Plaintiff of the federal seizure and initiate forfeiture proceedings

demonstrate that the Federal Defendant Employees intended to violate Plaintiff's Constitutional due process rights.

44. To add, a conversation between Defendant U.S. Marshal Lake and the Internal Affairs Bureau after Plaintiff was extradicted from New York, in which the IAB "documented" revealed that U.S. Marshal Lake Stated to the investigator: "Mr. May-Shaw is unaware of federal authorities seeking his funds". Id. This statement and document clearly proves that Defendant U.S. Marshal Lake intended to violate Plaintiff's due process and keep it a "Secret" regarding the Seizure.

\* \* \* \* \* \*

45. Because Defendants U.S. Marshal Lake and John Doe Federal Employees did not provide Plaintiff with Constitutionally adequate notice regarding which federal agency had seized his currency or how he could challenge the validity of the seizure, above defendants also deprived Plaintiff of his Sixth Amendment right to obtain the defense counsel of his choosing.

46. Had Plaintiff been properly informed of the

federal agency responsible for the seizure and the alleged basis for it, Plaintiff would have had the knowledge required to effectively challenge the seizure at the outset of his federal criminal case. Had Plaintiff's challenge been successful, his money would have been returned to him, and Plaintiff would have used the funds to hire his preferred counsel rather than the defense counsel ultimately retained due to counsel's low fees.

47. Plaintiff planned to hire an attorney whose fee's were much more and rather expensive. The government and John Doe Federal Employees knew of this plan from listening to Plaintiff's telephone calls while Plaintiff was incarcerated in Rikers Island, NY. However, Defendants U.S. Marshal Lake and John Doe Federal Employees infringed on hiring this attorney by concocting an unconstitutional plan to deprive Plaintiff of his funds held by NYPD.

48. At the conclusion of the federal criminal case, Plaintiff was forced to file a motion to proceed with his appeal in "Forma Pauperis", because of the lack of funds to retain a sufficient lawyer to handle the appeal process. The Judge reviewed the affidavit attesting to Plaintiff's poverty, and granted the motion.

On appeal was another instance that Plaintiff
needed his funds.

49. Plaintiff desired to take his case to trial
and at least challenge the drug amount that he
was forced to plead guilty to, but Plaintiff ran
out of funds to do so, as trial costs were not
covered in the $20,000 discounted fee. Plaintiff's
immediate and extended family had already ex-
hausted all of the entire resources available when
collecting the initial $20,000. These facts and
records confirm that Plaintiff required his seized
funds in order to have a choice in defense counsels.

50. At the time his funds were seized, Plain-
tiff was prepared to present substantial evidence
that these funds were not forfeitable, as they
were not derived from proceeds related to any
allegation in his federal criminal indictment. Plain-
tiff maintained written records and several receipt
books for his income at the time (of Plaintiff's arrest
in New York on June 15, 2016) which Plaintiff earned
profits from selling, financing and delivering
vehicles, or through the two businesses he owned—
CeeShaw Clothing Line and Five Star Retreat Hair
Salon. NYPD authorities had proof of such records.
A receipt book once held by NYPD arresting officer

mysteriously was lost or destroyed after NY authorities acknowledged the receipt books.

51. Upon information and belief, the government would not have been able to establish probable cause to believe the seized funds were forfeitable or had anything to do with the indictment during an adversarial hearing, meaning Plaintiff's funds would have been returned to him to pay for an effective defense counsel. Federal John Doe Defendants admitted that they "had not found a nexus sufficient enough to incorporate [the NYPD's] cases" with the federal indictment in the Western District of Michigan.

52. Significantly, Defendant U.S. Marshal Lake produced the federal warrant, but to NY authorities, Lake only produced the first page of the warrant application, failing to disclose subsequent pages outlining the facts that formed the basis of his alleged probable cause to seize the funds for forfeiture.

53. Under the Fifth and Sixth Amendments, Plaintiff was entitled to a pre-trial adversary hearing to challenge the legality of the seizure because

(1) his own assets were restrained ex parte at the onset of his federal criminal case, (2) the government and Defendants Lake and John Doe Federal Employees intended to continue the restraint of the funds throughout the trial process, (3) Plaintiff's abilities to pay attorney's fee's was implicated, and (4) Plaintiff was able to make a prima facie showing that his funds were not forfeitable.

54. Because Defendants U.S. Marshal Lake and John Doe Federal Employees concealed the seizure and so prevented the Plaintiff from discovering how he could challenge it, Defendants simultaneously interfered with his Sixth Amendment right to defend himself using whatever assets he lawfully obtained.

55. Plaintiff seeks monetary damages for this unconstitutional governmental interference. Plaintiff also seeks monetary damages for the deprivation of his property and unconstitutional seizure without notice. And/or Plaintiff seeks the return of the currency in the amount of $105,145.31, as these funds were not forfeitable.

-25-

## FEDERAL CLAIMS FOR RELIEF

CLAIM 1: Unlawful Deprivation of Property in Violation of Fourth and Fifth Amendment Guarantees Against Unreasonable Seizures and Protecting Procedural Due Process (Against Defendants Lake and John Doe Federal Employees in their individual Capacities)

56. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

57. Under the Fourth and Fifth Amendments of the U.S. Constitution and federal common law, Plaintiff has the right to be free from unreasonable and illegal searches and seizures, including the unlawful search and seizure of his property, and he has the right not to be deprived of his property without due process of law.

58. Defendant U.S. Marshal Lake violated Plaintiff's rights when he submitted an application for a federal warrant to seize Plaintiff's property subject to forfeiture that was not based on sufficient facts to establish probable cause, know-

ing that the government did not have a sufficient nexus to tie the funds to the Plaintiff's indictment.

59. Defendant U.S. Marshal Lake again violated Plaintiff's rights when he directed, participated in, consented to, and/or failed to intervene regarding actions or inactions taken to prevent Plaintiff from receiving adequate due process notice of the seizure of his funds pursuant to the federal warrant.

60. Defendants John Doe Federal Employees violated Plaintiff's rights when they directed, participated in, consented to, and/or failed to intervene regarding actions or inactions taken to prevent Plaintiff from receiving adequate due process notice of the seizure of his funds pursuant to the federal warrant.

61. ALL defendants John Doe Federal Employees again violated Plaintiff's rights when they directed, participated in, consented to, and/or failed to intervene regarding actions taken to seize Plaintiff's funds through a federal warrant application that did not meet the probable cause required for lawful seizures, and knowing they

-27-

did not have a sufficient nexus to tie the
funds to Plaintiff's indictment.

62. ALL defendants named in this claim
for relief were acting under color of federal
law at all times during the incidents giving
rise to this action.

63. As a direct and proximate result of
the acts and omissions of the defendants
named in this claim for relief, Plaintiff has
been deprived of his rights under the Fourth
and Fifth Amendments to the United States
Constitution and federal law.

64. Additionally, Plaintiff has no adequate
remedy currently available to him other than the
present lawsuit brought under federal common law.
See, Supra, Section I.

CLAIM 2: Conspiracy to Deprive Plaintiff of
Constitutional rights through Unlawful Seizure and
Retention of his Property in Violation of FOURTH and
Fourteenth Amendment Guarantees Against Unreasonable
Searches and Seizures
(Against Defendants Preston, Jon Schafer,

and John Doe GRPD Employees in their individual and official Capacities, and Defendants Lake and John Doe Federal Employees in their individual Capacities)

65. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

66. Under the Fourth and Fourteenth Amendments of the U.S. Constitution, 42 U.S.C. §1983, and federal common law, Plaintiff has the right to be free from unreasonable and illegal searches and seizures, including the unlawful seizure and retention of his property.

67. Through frequent communications made to NYPD from GRPD officers, City Employees, and U.S. Marshals to unconstitutionally retain Plaintiff's property, the following defendants engaged in concerted acts to inflict an unconstitutional injury on Plaintiff by agreeing to unlawfully deprive him of his property. The following overt acts, and the overt acts of physically withholding Plaintiff's property, were carried out in furtherance of the goal of the conspiracy.

-29-

68. Defendant Preston violated Plaintiff's rights and furthered the Conspiracy when he asked NYPD to hold Plaintiff's currency without Justification, privilege or probable Cause to retain the property. Defendant Preston again violated Plaintiff's rights and furthered the conspiracy when he Contacted NYPD authorities and fabricated lies Claiming Plaintiff was "in the process of being indicted" (when Plaintiff had been indicted February 2017) and claiming that he "believed" these funds were apart of his investigation to coerce NYPD to not release Plaintiff's currency, without justification, privilege or probable cause to do so.

69. Defendant Lake violated Plaintiff's rights and furthered the Conspiracy when he sent a letter to NYPD requesting that it hold all currency Seized from Plaintiff until October 31, 2017 without justification, privilege or probable cause to retain the property on August 23, 2017. Again Defendant Lake violated Plaintiff's rights and furthered the Conspiracy when he contacted NYPD to request that the NYPD hold Plaintiff's currency without a warrant, justification, privilege or probable

cause to retain the property on August 29, 2017.

70. Defendant Schafer violated Plaintiff's rights and furthered the conspiracy through his orders and unlawful supervision of GRPD Defendant Chad Preston and other GRPD officers who either requested that NYPD officers hold Plaintiff's currency without probable cause, or instructed others to request that NYPD hold Plaintiff's currency without probable cause. As the primary contact regarding the GRPD's investigation of Plaintiff, Defendant Schafer acted in a supervisory capacity and failed to protect Plaintiff despite his actual and constructive knowledge that the GRPD Defendants were engaged in conduct that posed a pervasive and unreasonable threat to the Constitutional rights of Plaintiff. The failure of Defendant Schafer to supervise and discipline the individual GRPD officers for their repeated unlawful conduct related to an investigation that Schafer was leading amounts to gross negligence, deliberate indifference, tacit approval, and/or intentional misconduct.

71. Defendants John Doe GRPD Employees, and John Doe Federal Employees violated Plaintiff's

rights and furthered the conspiracy when they directed, participated in, consented to, and/or failed to intervene regarding actions taken to unconstitutionally seize and retain Plaintiff's property without probable cause or other justification.

72. All defendants named in this claim for relief were acting under the color of state law at all times during the incidents giving rise to this action, in unconstitutionally holding Plaintiff's property. Additionally, by engaging in this conspiracy through the scope of their federal employment, Federal Employee defendants were also acting under color of federal law throughout this conspiracy.

CLAIM 3: Conspiracy to Deprive Plaintiff of Constitutional Rights through the Unlawful Deprivation of Property in Violation of Fifth and Fourteenth Amendment Guarantees of Procedural Due Process (Against Defendants Preston, Schafer, and John Doe GRPD Employees in their individual and official capacities, and Defendants Lake and John Doe federal Employees in their individual capacities)

73. Plaintiff incorporates all allegations of

the preceding paragraphs as if fully set forth herein.

74. Under the Fifth and Fourteenth Amendments of the U.S. Constitution, Plaintiff has the right not to be deprived of his property without due process of law. The federal and State employees named in this claim for relief were all acting under color of State law in this conspiracy by enlisting NYPD, a State agency, in unconstitutionally holding Plaintiff's property. Additionally, by engaging in this conspiracy through the scope of their federal employment, federal employee Defendants were also acting under color of federal law in this conspiracy.

75. The deprivation of plaintiff's property was carried out through procedures of the GRPD and U.S. Marshals Service. Each of these governing bodies was aware that Plaintiff's due process rights were being violated, and each was in a position to provide him with a pre-deprivation hearing, which all failed to do. Plaintiff was not given any document explaining the basis of the seizure ~~unknown~~ and Plaintiff was never notified of procedures he could follow to attempt to reclaim his property; and Plaintiff was deprived of his property as a result.

-33-

76. Through frequent communications and requests made to NYPD from GRPD officers and U.S. Marshals to retain Plaintiff's property without informing Plaintiff of the seizure or providing him with an opportunity to challenge it, the following defendants engaged in concerted acts to inflict an unconstitutional injury on Plaintiff by agreeing to unlawfully deprive him of his due process rights.

77. The following overt acts, and the overt acts of physically withholding Plaintiff's property without informing him of the seizure, were carried out in furtherance of the goal of the conspiracy.

78. Defendant Preston violated Plaintiff's rights and furthered the conspiracy when he asked NYPD to hold Plaintiff's currency without a warrant and without informing Plaintiff of the basis for the seizure or the procedures by which Plaintiff could challenge the seizure.

79. Defendant Lake violated Plaintiff's rights and furthered the conspiracy when he sent a letter to the NYPD on August 23, 2017 requesting that it hold all currency seized from Plain-

tiff until October 31, 2017 without providing
notice to Plaintiff or informing him of procedures
by which he could challenge the seizure. Again
Defendant Lake violated Plaintiff's rights and
furthered the conspiracy when he contacted
NYPD on August 29, 2017 to request that
the NYPD hold Plaintiff's currency without noti-
fying Plaintiff or explaining to him the procedures
by which he could contest the seizure. Subsequ-
ently, during a conversation with IAB investi-
gators, Defendant Lake stated "Mr. May-Shaw
is unaware of federal authorities seeking
forfeiture of his funds"... a statement clearly
demonstrating Defendant Lake had unlawful
intentions of seizing Plaintiff's funds without
notifying Plaintiff or providing procedures to
challenge such seizure.

80. Defendant Schafer violated Plaintiff's
rights and furthered the conspiracy through his
orders and unlawful supervision of GRPD officer
Chad Preston and other GRPD officers who
either request that NYPD officers hold Plaintiff's
currency or instructed others to request that
NYPD officers hold his currency without first
providing him with notice of the impending
seizure or information about procedures available

to Plaintiff to seek to reclaim his property. As the primary GRPD Contact regarding the GRPD's investigation of Plaintiff, Defendant Schafer acted in a supervisory capacity and failed to protect Plaintiff despite his actual or constructive knowledge that the GRPD Defendants were engaged in conduct that poses a pervasive and unreasonable threat to the Constitutional rights of Plaintiff. The failure of Defendant Schafer to supervise and discipline the individual GRPD officers amounts to gross negligence, deliberate indifference, tacit approval, and/or intentional misconduct.

81. Defendants John Doe GRPD Employees and John Doe Federal Employees, violated Plaintiff's rights and furthered the conspiracy when they directed, participated in, consented to, and/or failed to intervene regarding actions taken to un-constitutionally hold Plaintiff's property without ensuring adequate due process protections.

82. As a direct and proximate result of the acts and omissions of the Defendants named in this claim for relief, Plaintiff has been deprived of his rights under the Fifth and Fourteenth Amendments.

-36-

CLAIM 4: Unlawful Government Interference with Plaintiff's Right to Pay for his Counsel of Choice in Violation of Sixth Amendment Guarantee of Criminal Defense Counsel

(Against Defendants Lake and John Doe Federal Employees in their individual Capacities)

83.  Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

84.  Under the Sixth Amendment of the U.S. Constitution and federal common law, Plaintiff has the right to be free from unjustified governmental interference with his right to defend himself, including paying for his defense counsel, using whatever assets he has or might reasonably and lawfully obtained.

85.  Defendant Lake violated Plaintiff's when he sought an application for a federal warrant to seize Plaintiff's currency subject to forfeiture without providing Plaintiff any notice or reasonable means to determine how he could challenge the seizure and reclaim his funds so that he could hire his chosen defense counsel.

86. Defendants John Doe Federal Employees

violated Plaintiff's rights when they directed, parti-
cipated in, consented to, and/or failed to intervene
regarding actions taken to seize Plaintiff's currency
subject to forfeiture without providing Plaintiff
any notice or reasonable means to determine
how could challenge the seizure and reclaim his
funds so that he could hire his chosen defense
Counsel.

87. All defendants named in this claim
for relief were acting under color of federal
law at all times during the incidents given
rise to this action.

CLAIM 5: Failure to Train/Supervise/Discipline
and Municipal Policy & Practice in Violation of
42 U.S.C. § 1983
(Against Defendant City of Grand Rapids)

88. Plaintiff incorporates the allegations
of the preceding paragraphs as if set forth herein.

89. Plaintiff has been deprived of his constitu-
tional rights, and such deprivations was done pur-
suant to the Defendant Grand Rapids' official
policies, practice, and custom, as well as the City

of Grand Rapids' failure to properly train, supervise, and discipline it's employee officers related to GRPD officers' request that NYPD hold Plaintiff's property during the pendency of their alleged investigation as a professional courtesy to them without a warrant and without other justification, privilege or probable cause. This policy practice and custom proximately caused Plaintiff injuries heretofore described. Thus, the City of Grand Rapids itself is responsible for the injury that it caused and is liable to Plaintiff for the violation of his rights as guaranteed by the Fourth and Fourteenth Amendments to the U.S. Constitution.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief jointly and severally against Defendants:

(a) A declaratory Judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, Stating that the City, GRPD Defendants, and U.S. Marshal and other Federal Employees violated Plaintiff's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments, and that these violations were apart of unlawful Conduct;

(b) Compensatory damages in an amount to be determined at trial for the injuries sustained by Plaintiff as a result of the events alleged herein;

(c) All statutory interest on any sums awarded;

(d) Punitive damages in an amount to be determined at trial;

(e) An order for the return of the $105,145.31 unlawfully seized and never forfeited;

(f) Any other relief that this Court deems just and proper.

Respectfully Submitted:

DATED: July 9th, 2020

/S/Christopher May-Shaw

CHRISTOPHER MAY-SHAW
REG. NO. 11506-040
FCI TERRE HAUTE
PO BOX 33
TERRE HAUTE, IN 47808

-40-



CLERK of the Court
nited States District Court
stern District of Michigan
10 Michigan St. NW
Grand Rapids, MI
                49503

CHRISTOPHER MAY-SHAW
REG. NO. 11506-040
FEDERAL CORRECTIONAL INSTITUTION
PO BOX 33
TERRE HAUTE, IN 47808

Legal Mail