UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER PAYTON MAY-SHAW,

        Plaintiff,                Case No. 1:20-cv-647

v.                                          Hon. Jane M. Beckering

CITY OF GRAND RAPIDS, *et al.*,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Christopher Payton May-Shaw ("May-Shaw"), a federal prisoner, has filed this *pro se* civil rights case. This matter is now before the Court on motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by defendants City of Grand Rapids, Jon Schafer, and Chad Preston (ECF No. 26) and defendant Jesse Lake (ECF No. 29). For the reasons discussed, this case should be dismissed for lack of subject matter jurisdiction.

    **I.**    **Background**

This civil case arose from May-Shaw's criminal prosecution in *United States v. May-Shaw*, 1:17-cr-57 (W.D. Mich.) (sometimes referred to as "the federal criminal case"). The government commenced the criminal case on February 22, 2017. *See* Indictment (1:17-cr-57, ECF No. 1). On March 6, 2018, May-Shaw entered into a plea agreement to resolve the federal criminal case. In his plea agreement, May-Shaw agreed to plead guilty to the charge contained in Count One of the First Superseding Indictment, "conspiracy to distribute and possess with intent to distribute cocaine and heroin, in violation of Title 21, United States Code, Sections 846 and 84l(a) and (b)(l)(A)." Plea Agreement (1:17-cr-57, ECF No. 68, PageID.257).

1

In ¶4.B. of his plea agreement, May-Shaw consented to the forfeiture of $105,145.31 related to the criminal action:

> B. ASSET FORFEITURE: May-Shaw consents to the administrative forfeiture by the Drug Enforcement Administration of the $105,145.31 seized from him on or about June 16, 2016 and August 11, 2016, plus any accrued interest since the date of seizure. May-Shaw does not contest, but does not admit, the government's claim that he obtained all of the $105,145.31 from drug trafficking or possessed the $105,145.31 with the intent to facilitate drug trafficking, and that it is subject to administrative forfeiture pursuant to 19 U.S.C. §§ 1607-1609 as incorporated by 21 U.S.C. § 881(d). If the Drug Enforcement Administration is unable to complete administrative forfeiture of the $105,145.31, May-Shaw consents to the civil forfeiture of the same pursuant to 21 U.S.C. § 881(a)(6) in any future civil forfeiture case filed by the United States. As part of this agreement on asset forfeiture, May-Shaw agrees to relinquish any and all claims to the $105,145.31 and any and all defenses to the civil and/or administrative forfeiture of the $105,145.31, including, but not limited to, any defenses pertaining to improper venue or the notice provisions of 18 U.S.C. § 983. May-Shaw further agrees to cooperate in any further forfeiture proceeding pertaining to the $105,145.31. Such cooperation shall include, but not be limited to, testifying truthfully in any related administrative or civil forfeiture proceeding, and not assisting any individual or other third party make a claim to the $105,145.31.

*Id*. at PageID.259-260.

In exchange for May-Shaw's guilty plea, the government dismissed three counts set forth in the First Superseding Indictment: Count II (Possession with Intent to Distribute Cocaine); Count IV (Possession with Intent to Distribute Heroin); and Count V (Maintaining a Drug-Involved Premises). *See* Plea Agreement at ¶5.A,, PageID.260; First Superseding Indictment (1:17-cr-57, ECF No. 28, PageID.81-84).

In addition, the government agreed "to bring no further charges against him relating to any information known to the government prior to the date of this agreement." Plea Agreement at ¶5.A.

In addition, the government agreed "[n]ot to file a supplemental information under 21 U.S.C. § 851 alleging that the Defendant has at least one prior felony drug conviction, the effect of which would have been to significantly increase his sentence[.]" *Id*. at ¶5.B., PageID.260.

In addition, the government agreed:

> Not to oppose the Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3El.1(a) of the Sentencing Guidelines, and not to pursue an enhancement for obstruction of justice under Section 3C1.1.  However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by the Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3El.1 or 3Cl.l. Should the Court grant a two-level reduction as provided herein, the government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3El.l(b).

*Id*. at ¶5.C., PageID.260.

The parties also agreed that,

> This guilty plea is conditional, in that the defendant reserves the right, on appeal from the judgment, to seek review of the adverse determination of his motion to suppress. ECF No. 54. If the defendant prevails on appeal of that determination, he will be allowed to withdraw his guilty plea. **As part of this agreement, May-Shaw also agrees to forfeit and forever give up his claim to currency seized from him on or about June 15, 2016 and August 10 , 2016 in New York as provided in paragraph 4, below**.

*Id*. at ¶1, PageID.257 (emphasis added).

In addition, the parties agreed that "By pleading guilty, the Defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed, except to the right to appeal the Court's ruling on his motion to suppress as spelled out above." *Id*. at ¶8, PageID.262.

As part of the plea agreement, May-Shaw acknowledged his understanding that the offense is punishable by a minimum sentence of 10 years imprisonment, a maximum sentence of life imprisonment, and a maximum fine of $10,000,000.00. *Id*. at ¶3, PageID.258.

The Court accepted May-Shaw's guilty plea on March 23, 2018. Order (1:17-cr-57, ECF No. 70).

At May-Shaw's sentencing held on July 17, 2018, his counsel asked the Court to waive the fine because May-Shaw had no funds, having "willingly" given up the $105,145.31:

> In addition, the probation officers recommended a fine, and we ask that the fine be waived in this case. Mr. May-Shaw has no resources. I'm retained in this case, but I was retained by his family and not some other means. **The government has taken all of his resources and seized the forfeit of that. He didn't contest the forfeiture. He willingly gave all of that money over as the proceeds of criminal conduct, so I don't know if a fine is appropriate in this case**.

Sent. Trans. (1:17-cr-57, ECF No. 111, PageID.557) (emphasis added).

May-Shaw received substantial benefits from the plea agreement: the Court dismissed Counts 2, 4 and 5 of the First Superseding Indictment; sentenced May-Shaw to 144 months imprisonment; and did not assess a fine. Judgment (1:17-cr-57, ECF No. 94). In this regard, the Court declined to assess May-Shaw the potential $10,000,000.00 fine, stating on the record that,

> In light of the defendant's abandonment of the property as alleged in the forfeiture counts, the Court will not oppose -- or not impose a fine in this case, finding the defendant does not have the ability to pay the fine.

Sent. Trans. at PageID.564. Consistent with the terms of the plea agreement, the currency was forfeited about two months after the judgment. *See* Declarations (ECF No. 43-1) (forfeitures completed on September 6 and 25, 2018).

Pursuant to the terms of the plea agreement, May-Shaw appealed this Court's ruling on the motion to suppress evidence. The Sixth Circuit affirmed the ruling. *See United States v. May-Shaw*, 955 F.3d 563 (6th Cir. 2020). This Court's judgment and sentence became final when the United States Supreme Court denied May-Shaw's petition for a writ of certiorari. *See May-*

*Shaw v. United States*, 141 S. Ct. 2763 (June 14, 2021); Letter (1:17-cr-57, ECF No. 126) (docket sheet notes that "the petition for writ of certiorari is DENIED" and entry of final judgment).

### II.    May-Shaw's claims

May-Shaw filed this civil case on July 16, 2020. His four-page amended complaint adopted the facts as set forth in his original 40-page complaint (ECF No. 1, PageID.1-40). May-Shaw has sued six defendants: the City of Grand Rapids; Grand Rapids Police Department (GRPD) Detective Jon Schafer; GRPD Detective Chad Preston; unknown parties (GRPD employees); U.S. Marshal Senior Inspector Jesse Lake; and unknown parties (Federal employees). Compl. at PageID.6-8. May-Shaw's civil case ignores the explicit terms of the plea agreement and claims that the $105,145.31 of currency was "unlawfully seized and never forfeited." Amend. Compl. (ECF No. 4, PageID.52).

In his dispositive motion, defendant Lake fairly summarized May-Shaw's allegations as follows:

> All of his claims stem from the civil forfeiture of $105,145.31 in relation to Plaintiff's 2018 conviction and the underlying investigation. A short history of those events is therefore helpful for the purposes of this motion, although the motion will only rely on facts as pleaded in the Complaint as amended and permitted to be considered on a motion to dismiss.
>
> In 2016, Plaintiff shared an apartment on Norman Drive in Grand Rapids with Rosheedah Heath. (Plea Agreement, ECF No. 68, PageID.258, No 1:17-cr-00057 (W.D. Mich.).) On February 18, 2016, officers observed Plaintiff exit the residence and place a handbag in a BMW registered to him. (*Id*.) A search warrant was executed at the Norman Drive residence shortly thereafter. (*Id*.) A search of the apartment resulted in the discovery of materials used to package cocaine and several grams of cocaine. (*Id*. at PageID.259.) A search of the BMW resulted in the recovery of about one kilogram of cocaine and more than $200,000, most of which was recovered from the handbag Plaintiff had placed in the car. (*Id*.) Plaintiff was not at the residence when the search warrant was executed. *May-Shaw [v. City of Grand Rapids*, No. 1:19-cv-117, 2020 WL 3548549 at *2 (W.D. Mich. May 13, 2020) (R&R)].

After the search, a warrant was issued for Plaintiff's arrest. *Id*. Plaintiff was subsequently arrested on June 15, 2016 in New York. *Id*. at *11. At the time of this arrest, NYPD officers recovered $93,654.12. (Compl. ¶¶ 19-20, ECF No. 1, PageID.10.) Plaintiff was released from custody. (*See id*.) Plaintiff was arrested again in New York on August 10, 2016, at which time NYPD officers recovered over eleven thousand dollars. (*See id*.) Plaintiff was charged in New York, but those charges were later dismissed. (*See id*.)

The United States adopted Plaintiff's prosecution in the Western District of Michigan and a federal grand jury returned a five-count indictment, which included charges against Plaintiff for conspiracy to distribute and possess with intent to distribute cocaine and heroin, possession with intent to distribute cocaine and heroin, and maintaining a drug-involved premises. (Indictment, ECF No. 1, PageID.1-5, No. 1:17-cr-00057 (W.D. Mich.).)

Lake sought a federal warrant to seize the cash held by the NYPD as subject to criminal and civil forfeiture. (Seizure Warrant Application, ECF No. 1, PageID.1, No. 1:17-mj-00341 (W.D. Mich.).) On October 27, 2017, a United States Magistrate Judge found probable cause to approve and sign the warrant, authorizing the seizure of $105,145.31 in funds seized from Plaintiff and held, at that time, in the custody of the NYPD. (*Id*.) The warrant was executed, and the funds were seized.

Plaintiff subsequently entered into a plea agreement, whereby he agreed to plead guilty to one count of conspiracy to distribute and possess with intent to distribute heroin and cocaine, in violation of Title 21, United States Code, Sections 846 and 841(a) and (b)(1)(A). (Plea Agreement, ECF No. 68, PageID.257, No. 1:17-cr-00057 (W.D. Mich.).) As part of that agreement, he agreed to forfeit and forever give up his claim to the currency seized in New York. (*Id*.) He also consented to administrative forfeiture of the funds and did not contest that all of the money was obtained from drug trafficking or possessed with the intent to facilitate drug trafficking. (*Id.* at PageID.259.) He additionally agreed to cooperate in any forfeiture proceedings involving the $105.145.31. (*Id.* at PageID.260.)

At his sentencing, Plaintiff's attorney conceded that "he has a history of drug trafficking." (Sentencing Tr., ECF No. 111, PageID.555, No. 1:17-cr-00057 (W.D. Mich.).) He acknowledged that since Plaintiff's August 2016 arrest in New York, he has been in custody "at his own doing" and does not claim that "he was wrongfully detained or anything like that." (Id. at PageID.555-556.) He reaffirmed that he did not contest the forfeiture of "all of his resources" and that he "willingly gave all of that money over as the proceeds of criminal conduct." (*Id*. at PageID.557.) Plaintiff also confirmed that he was satisfied with the representation provided by his retained attorney, Mr. Matthew Borgula. (*Id*. at PageID.553, 557) In light of Plaintiff's agreement to the forfeiture, the Court did not impose a fine. (*Id.* at PageID.564.)

In the present lawsuit, Plaintiff alleges that the NYPD, the Grand Rapids Police Department, and the U.S. Marshals Service conspired to hold Plaintiff's funds unlawfully for more than seven months without legal justification, thereby depriving Plaintiff of the ability to pay for the legal counsel of his choice. (Compl. ¶¶ 1, 3, ECF No. 1, PageID.2-4.)

Plaintiff asserts that by July of 2017, both of his New York criminal cases had been dismissed and that instead of returning the funds at the conclusion of his New York criminal cases, the NYPD held the funds at the request of the Grand Rapids Police Department and U.S. Marshals Service without any legal grounds. (*Id.* ¶¶ 2, 20, PageID.3, 10.) Plaintiff alleges that a Grand Rapids detective requested that the funds be held on July 27, 2017, because the Grand Rapids Police Department was conducting an ongoing investigation with the Drug Enforcement Agency regarding Plaintiff. (*Id.* ¶ 23, PageID.11.) Plaintiff terms this situation a conspiracy that ended on October 27, 2017, when the federal seizure warrant was obtained. (*Id.* ¶ 3. PageID.3-4.)

Plaintiff claims that his due process rights were further violated after the warrant was obtained when the Defendants did not provide him with notice of the seizure. (*Id.*)

Plaintiff asserts that Lake sent a letter to the NYPD on August 23, 2017, stating that the U.S. Marshals were in the process of seeking a seizure warrant for the currency held by the NYPD and requesting that the NYPD hold the funds until October 31, 2017. (*Id.* ¶¶ 16, 25, PageID.8-9, 12-13.) NYPD notified Lake that the funds were being held. (*Id.*) Lake again contacted the NYPD on August 29, 2017, and stated that U.S. Marshals were in the process of seeking a seizure warrant for the funds held in New York. (*Id.* ¶ 26, PageID.13.)

Plaintiff states that Lake and other Defendants were not able to establish probable cause until October 27, 2017, when this Court issued the seizure warrant (*id.* ¶¶ 17, 27, 30, PageID.9, 13-15), although he later claims that Lake did not have probable cause to seek the warrant (*id.* ¶ 58, PageID.26-27). The NYPD then notified Plaintiff's representative that the funds had been federally adopted for forfeiture and directed all inquiries to a Grand Rapids police detective. (*Id.* ¶ 27, PageID.13-14.)

Plaintiff alleges that Lake and other Defendants failed to provide him with adequate notice of the seizure after the warrant was issued, including a failure to provide Plaintiff or his representative with a copy of the warrant. (*Id.* ¶¶ 18, 32-36, PageID.9-10, 15-18.) Plaintiff further alleges that Lake "and John Doe Federal Employees" never commenced forfeiture proceedings. (*Id.* ¶ 37, PageID.18-19.)

7

Defendant Lake's Brief at PageID.151-155 (footnote omitted).[1]

May-Shaw alleged five claims for relief:

Claim 1: Unlawful deprivation of property in violation of Fourth and Fifth Amendment guarantees against unreasonable seizures and protecting procedural due process (against defendants Lake and John Doe federal employees in the individual capacities).

Claim 2: Conspiracy to deprive plaintiff of constitutional rights through unlawful seizure and retention of his property in violation of the Fourth and Fourteenth Amendment guarantees against unreasonable searches and seizures (against defendants Preston, Jon Schafer, and John Doe GRPD employees in their individual and official capacities, and defendants Lake and John Doe federal employees in their individual capacities).

Claim 3: Conspiracy to deprive plaintiff of constitutional rights through the unlawful deprivation of property in violation of the Fifth and Fourteenth Amendment guarantees of procedural due process (against defendants Preston, Schafer, and John Doe GRPD employees in their individual and official capacities, and defendants Lake and John Doe federal employees in their individual capacities).

Claim 4: Unlawful government interference with plaintiff's right to pay for his counsel of choice in violation of the Sixth Amendment guarantee of criminal defense counsel (against defendants Lake and John Doe federal employees in their individual capacities).

Claim 5: Failure to train / supervise / discipline and municipal policy & practice in violation of 42 U.S.C. § 1983 (against defendant City of Grand Rapids).

*See* Compl. at PageID.26, 28-29, 32, 37, 38.[2]

For his relief, May-Shaw wants, among other things: a declaratory judgment that the City of Grand Rapids, the GRPD defendants, the U.S. Marshal, and other federal employees engaged in unlawful conduct and violated his rights under the Fourth, Fifth, Sixth, and Fourteenth

---

[1] In providing a context for May-Shaw's allegations, defendants referenced *May-Shaw v. City of Grand Rapids*, a meritless civil rights lawsuit for alleged violations of May-Shaw's constitutional rights related to evidence collected in his criminal case. The Court notes that May-Shaw filed this civil lawsuit on February 13, 2019, while his criminal appeal – raising some of the same issues – was pending in the Sixth Circuit.

[2] To clarify Claim 4, May-Shaw alleged that he was unable to hire his "chosen defense counsel" because authorities seized the $105,145.31. Compl. at PageID.37-38; Sent. Trans. at PageID.557.

Amendments; compensatory damages; punitive damages; and "[a]n order for the return of the $105,145.31 unlawfully seized and never forfeited." *Id*. at PageID.39-40.

## II.     Defendants' motions to dismiss for lack of subject matter jurisdiction

Defendants seek to dismiss May-Shaw's amended complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994). The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1332 (diversity of citizenship jurisdiction). *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 513 (2006). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). "[W]hen subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss." *Giesse v. Secretary of Department of Health and Human Services*, 522 F.3d 697, 702 (6th Cir. 2008).

A motion under Fed. R. Civ. P. 12(b)(1) may be brought either as a facial attack or a factual attack. *Gentek Building Products, Inc. v. Steel Peel Litigation Trust*, 491 F.3d 320, 330 (6th Cir. 2007).

> A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading. When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. If those allegations establish federal claims, jurisdiction exists.

*Id*. (internal citation omitted). "Where, on the other hand, there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations." *Id*. "When a factual attack . . . raises a factual controversy, the district court must

9

weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id*.

Defendants have raised a facial attack on subject matter jurisdiction, which takes May-Shaw's allegations as true.

> To reach the merits of a case, an Article III court must have jurisdiction. "One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry*, 570 U.S. 693, 704, 133 S.Ct. 2652, 186 L.Ed.2d 768 (2013). The three elements of standing, this Court has reiterated, are (1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision. *Ibid*. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992))

*Virginia House of Delegates v. Bethune-Hill*, -- U.S. --, 139 S. Ct. 1945, 1950 (2019).

All of May-Shaw's claims arise from defendants' alleged actions related to the unlawful forfeiture of the $105,145.31. To establish any of his claims against defendants, May-Shaw must first establish that he has standing to contest the forfeiture, which is the source of all of his alleged injuries. May-Shaw lacks standing to contest the forfeiture because he suffered no injury.

To establish Article III standing in a forfeiture case involving currency, "a claimant must have a colorable ownership, possessory or security interest in at least a portion of the defendant property." *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998). Here, May-Shaw has no colorable ownership, possessory interest, or security interest in the forfeited currency. May-Shaw gave up any interest in the currency when he entered the plea agreement, repeatedly relinquished all claims to the $105,145.31, and received substantial benefits from his guilty plea and abandonment of the property. *See* Plea Agreement at ¶¶1, 4.B., 5.A., 5.B., and 5.C. As discussed, *supra*, at sentencing, the Court considered defense counsel's arguments

that May-Shaw willingly gave over the $105,145.31 as the proceeds of criminal conduct. By abandoning his claim to the currency, May-Shaw avoided paying a fine of up to $10,000,000.00.

In summary, May-Shaw has suffered no injury related to the forfeiture of the $105,145.31 because he has no ownership interest in that property, having consented to the forfeiture and relinquished any and all claims to the currency. Absent any injury, May-Shaw has no standing to file a federal lawsuit to obtain the currency, to contest the forfeiture, or to seek damages for alleged violations of his federal constitutional rights related to the forfeiture. *See Virginia House of Delegates*, 139 S. Ct. at 1950; *$515,060.42 in U.S. Currency*, 152 F.3d at 497. Accordingly, this case should be dismissed for lack of subject matter jurisdiction.[3]

### III.   RECOMMENDATION

For all of these reasons, I respectfully recommend that defendants' motions to dismiss (ECF Nos. 26 and 29) be **GRANTED** and that this case be **DISMISSED**.

Dated:  January 27, 2022            /s/ Ray Kent
                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[3] Having concluded that this Court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), it is unnecessary to address defendants' additional grounds that the amended complaint fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).